IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| JAMES and MARY JORDAN, | * |
| Plaintiffs, | * |
| vs. | * |
| | CASE NO. 4:07-CV-80 (CDL) |
| THE SCOTT FETZER COMPANY, | * |
| Defendant. | * |

O R D E R

Plaintiffs James and Mary Jordan ("Plaintiffs" or "the Jordans") filed the above-captioned action asserting claims against The Scott Fetzer Company ("Defendant" or "Scott Fetzer") under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Presently before the Court is Defendant's Motion to Dismiss (Doc. 8) pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim. For the following reasons, this motion is denied.

FACTUAL BACKGROUND

In ruling upon Defendant's motion to dismiss, the Court accepts Plaintiffs' allegations as true and construes all reasonable inferences in their favor. Those allegations establish the following:

**I. The Parties**

Scott Fetzer is a Delaware corporation of which The Kirby Company ("Kirby") is an unincorporated subsidiary. Kirby manufactures and sells a home cleaning system which includes vacuum cleaners, attachments, and accessories. Kirby sells its products "through and to a network of several hundred independent distributors" who "pay Kirby a wholesale price . . . then sell . . . to retail consumers at

a significantly higher retail price, typically $1,500 to $2,000.00 or more." (Compl. ¶ 9.)

The Jordans purchased a Kirby vacuum on May 17, 2003 from distributor A.L. Webb & Associates of Roswell, Georgia. They paid $205.88 of the $1,905.88 cash price and financed the remainder through United Consumer Financing Services ("UCFS"), another Scott Fetzer affiliate.[1] After taxes and finance charges, the total sales price for the Jordans' Kirby vacuum was $2,458.28.

## II. Product Sale & Registration

"Most of the marketing by the distributors to consumers is done by door-to-door sales efforts." (Compl. ¶ 9.) A "typical" sales presentation involves opening a new, previously unopened vacuum cleaner and demonstrating the product's capabilities. The salesperson represents to the buyer that he or she will be an "original purchaser" of the brand new Kirby vacuum; "packaging and documentation provided to the purchaser . . . confirm that representation." (*Id.* at ¶ 14.) For buyers interested in financing a purchase, the salesperson obtains information "and telephone[s] UCFS for credit approval." (*Id.* at ¶ 9.) When a sale is completed, the buyer retains the new, "out-of-the-box" Kirby vacuum.

The salesperson completes each sale of a new Kirby vacuum by presenting the buyer with an "Owner Care Program" brochure and a gold "Original Purchaser's Registration" card ("Gold Card"). The brochure explains the buyer's warranty rights and "specifies in several instances that the warranty rights belong only to the 'original purchaser.'" (Compl. ¶ 14.) The Gold Card, which is preprinted with

---

[1] "Many of the vacuums are financed through UCFS at rates exceeding 18% or more." (Compl. ¶ 9.)

2

the product's serial number, "is used to register the customer as the original purchaser" and "to record the name, address, date of purchase and other demographic information related to the customer or to the vacuum or the salesperson." (*Id.* at ¶ 13.) Distributors return the Gold Cards to Kirby in exchange for a $2.00 fee.

### III. The Scheme

"For a variety of reasons, after using their new vacuum cleaners, many original purchasers return their Kirby vacuum cleaner to the independent distributor who sold it to them." (Compl. ¶ 1.) In October 2001, Kirby issued a policy statement instructing distributors to "'pick[] up the Kirby, resell[] it, and reclaim[] most of the initial cash flow.'" (*Id.* at ¶ 17 (emphasis omitted).) Plaintiffs allege that consumers return tens of thousands of new Kirby vacuums each year. (*Id.* at ¶ 17.)

Since used Kirby vacuums are significantly cheaper than the new models,[2] "Kirby and the distributors have a common interest in keeping off the market as many used Kirby vacuums as possible, thus protecting the price of new Kirby vacuums." (*Id.* at ¶ 12.) In order to minimize the market for used Kirby vacuums, distributors repackage used vacuum cleaners and sell them as new, often "at or near the price of a new vacuum and sometimes [] at more than the original sales price." (*Id.* at ¶ 14.) Not only is Kirby aware of this practice, it "participates in the scheme by, among other things, selling to its distributors

---

[2]Plaintiffs aver that "[t]he average eBAY auction price for a used Kirby vacuum is less than $300.00." (Compl. ¶ 29.)

3

duplicate or replacement 'Original Purchaser's Registration' cards to be given to secondhand purchasers[.]"[3] (*Id.* at ¶ 1.)

"When a distributor resells a previously sold vacuum to a secondhand purchaser, the original . . . [Gold Card] cannot be given to the secondhand purchaser because it was given to the original purchaser." (Compl. ¶ 21.) Thus, when selling a used vacuum cleaner as new, the salesperson must substitute the preprinted Gold Card with a replacement "Original Purchaser Registration" card. These replacement cards are known as "Blue Cards." Since the Blue Cards are not preprinted with product serial numbers, a salesperson can use a Blue Card to sell, and register, any Kirby vacuum. Like the Gold Cards, the Blue Cards are marked as "Original Purchaser's Registration" cards, "so the consumer is naturally led to believe, and reasonably relies on the representation, that the vacuum is new." (*Id.* at ¶ 21.) According to Plaintiffs, however, this often is not the case.

Distributors purchase the Blue Cards from Kirby's customer service center. According to Kirby's "Gold Card Procedures Policy Statement," a salesperson should only use a Blue Card when:

1. The original Gold Card is lost. If this occurs, a note should be attached to the Blue Card stating that the Gold Card was lost.

 . . . [or]

2. The original customer, who completed the Gold Card, cancels the sale or their financing is not approved. When this occurs, and the unit is resold to another

---

[3]Plaintiffs also allege that "Kirby commonly sells distributors new empty boxes and packaging material for the obvious purpose of repackaging units that the distributor previously sold to a prior customer." (Compl. ¶ 27.)

4

>               customer, a Blue Card should be completed and stapled
>               to the original Gold Card.

(*Id.* at ¶ 19 (emphasis omitted).)  On a monthly basis, distributors mail in their completed registration cards and Kirby prepares a payment reconciliation report, or "G.S.R. Report."  For each vacuum cleaner sold, the G.S.R. Report lists: (1) the serial number; (2) the "card type" on which the distributor reported the sale; (3) "whether Kirby has previously paid the distributor the $2.00 fee for reporting the first sale"; and (4) the date of the sale and delivery of the unit.  (*Id.* at ¶ 23.)

If a distributor returns a Blue Card with a note "that the Gold Card was lost," and "the [serial number] was not previously reported as a sale," the distributor receives the same $2.00 fee as for returning a Gold Card.  (Compl. ¶ 19.)  Therefore, instead of listing either Gold or Blue in the "card type" column of the G.S.R. Report, Kirby often reports either "Direct" or "Matched or Previously Paid."

> "Direct" mean[s] that Kirby is paying the distributor the
> $2.00 Gold Card fee for reporting a sale.  "Matched or
> Previously Paid" means that Kirby is not paying the
> distributor . . . because Kirby has already paid the . . .
> fee in some prior period for selling the very same unit at
> least once before.

(*Id.* at ¶ 24 (emphasis omitted).)  Plaintiffs contend that "'Matched or Previously Paid' occurs regularly on [G.S.R. Reports] because distributors commonly resell as 'new' vacuums that have been previously sold."  (*Id.* at ¶ 24.)

## DISCUSSION

The Jordans purchased a "new" Kirby vacuum that had been previously registered in another person's name.  They filed this proposed class action lawsuit pursuant to 18 U.S.C. § 1964(c), which allows a civil plaintiff to sue for treble damages sustained as a

5

result of a defendant's violation of 18 U.S.C. § 1962. Count I of Plaintiffs' Complaint alleges that Defendant violated § 1962(c) by unlawfully participating "in the conduct of [an] enterprise's affairs through a pattern of racketeering activity" predicated on mail and wire fraud.[4] Count II alleges that Defendant violated § 1962(d) by conspiring to do the same.[5] Plaintiffs contend that, as a result of these violations, they and other similarly situated consumers suffered damages in the amount of the difference in price between a new Kirby vacuum and a used Kirby vacuum. Defendant seeks dismissal of Plaintiffs' claims under Federal Rules of Civil Procedure Rule 12(b)(6), arguing that they failed to state a federal RICO claim upon which relief may be granted.

## I. Standard for Motion to Dismiss

In ruling on a motion to dismiss for failure to state a claim, the analysis "is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). The Court must "constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). "Of course, a formulaic recitation of the elements of a cause of action will not do." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (citing *Bell*

---

[4] 18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

[5] 18 U.S.C. § 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

6

*Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007)) (internal quotation marks omitted). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level" and "to raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claim or claims. *Id.* at 1295-96 (internal quotation marks and citations omitted). Additionally, "[a] complaint that states a claim of fraud must satisfy Federal Rule of Civil Procedure 9(b), which states that 'the circumstances constituting fraud or mistake shall be stated with particularity.'" *Rogers v. Nacchio*, 241 F. App'x 602, 606 (11th Cir. 2007) (per curiam) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

## II. Substantive RICO Violation

Plaintiffs first claim that Defendant violated § 1962(c) of the federal RICO statute. In order to establish a federal civil RICO violation under § 1962(c), a plaintiff must prove that (1) conduct of an enterprise, (2) through a pattern of racketeering activity, (3) resulted in injury to the plaintiff's "business or property" (4) "by reason of" the substantive RICO violation. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282, 1283 (11th Cir. 2006) (per curiam) (internal quotation marks and citation omitted). "In order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Rogers*, 241 F. App'x at 607 (internal quotations marks and citation omitted). Since Plaintiffs claim the racketeering activity is predicated on multiple violations of the mail and wire fraud statutes, they "must allege facts sufficient to support each of

7

the statutory elements for at least two" of the alleged violations. *Id.*

### A. Conduct of an Enterprise

The first statutory element of a § 1962(c) violation is "conduct of an enterprise." In order to allege conduct of an enterprise, Plaintiffs must plead: (1) the existence of an "enterprise"; (2) "that the enterprise had a common goal"; and (3) that Defendant "participate[d] in the operation or management of the enterprise itself." *Williams*, 465 F.3d at 1283-84 (internal quotation marks and citations omitted).

#### *1. Existence of an "Enterprise"*

The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact." 18 U.S.C. § 1961(4). The "definitive factor" in determining whether a RICO enterprise exists is "the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *Williams*, 465 F.3d at 1284 (internal quotation marks and citation omitted); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) ("A RICO enterprise exists 'where a group of persons associates, formally or informally, with the purpose of conducting illegal activity.'") (quoting *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984)).

In this case, Plaintiffs claim that Kirby, its distributors, and UCFS conspired to defraud consumers, and participated in a scheme to defraud consumers, by falsely representing to consumers that used

8

vacuum cleaners are new. Plaintiffs specifically allege that Defendant participated in the scheme by sending its distributors: (1) duplicate "Original Purchaser's Registration" forms; (2) "new boxes and packing materials, touch up paint and scratch removers, so that used vacuums can be made to look new"; and (3) G.S.R. Reports "to account for sales by the distributors, including sales of previously registered units." (RICO Interrog. Resp. 1 at 1.) Plaintiffs also allege that "distributors typically use the telephone to call UCFS to qualify the consumers as purchasers during the home demonstration, and UCFS knowingly finances the purchase of used vacuums as if they were new vacuums." (*Id.*) At this stage in the litigation, taking Plaintiffs' allegations as true, they clearly allege an "enterprise," or an association-in-fact, "that furnishes a vehicle for the commission of . . . the [alleged] pattern of racketeering activity." *Williams*, 465 F.3d at 1284 (internal citation and quotation marks omitted).

    *2. Common Purpose*

Plaintiffs also allege that the "enterprise" has the common purpose of "receiving revenue and profit from the sale of Kirby vacuum cleaners at the higher prices they are able to obtain for vacuum cleaners represented as new compared to the prices they could obtain for used vacuum cleaners and from the financing of those sales."[6] (Compl. ¶ 31.) It is clear that, in the Eleventh Circuit, "the common purpose of making money [is] sufficient under RICO." *Williams*, 465 F.3d at 1284.

---

    [6]Plaintiffs allege a second common interest in "obtaining and maintaining records of the identity and demographic characteristics of the retail purchasers of the vacuum cleaners and equipment." (Compl. ¶ 12.)

9

Defendant argues that Plaintiff cannot satisfy the common purpose element because only the distributors, not Defendant, make money from selling used vacuum cleaners to consumers. Although selling used vacuums as new presumably decreases the number of new vacuum cleaners Kirby sells to distributors, Plaintiffs clearly allege that "Kirby [still] has an interest in controlling the market of used Kirby vacuum machines." (Compl. ¶¶ 32, 34.) According to Plaintiffs, consumers return tens of thousands of new Kirby vacuums each year. (Compl. ¶ 17.) Taking this allegation as true, "Kirby and the distributors have a common interest in keeping off the market as many used Kirby vacuums as possible, thus protecting the *price* of new Kirby vacuums." (Compl. ¶ 12 (emphasis added).) Such a large supply of used products could easily cause a decline in the demand for, and price of, new vacuum cleaners. Furthermore, UCFS clearly has an interest in having consumers finance higher-priced vacuum cleaners, whether new or used. "[A]ll that is required is that the enterprise have *a* common purpose." *Williams*, 465 F.3d at 1286 (emphasis in original). Plaintiffs have satisfied their burden of pleading a common interest of the enterprise in maximizing profits. *See id.* at 1284-85 ("Because the complaint clearly alleges that the members of the enterprise stand to gain sufficient financial benefits from [the scheme to defraud], the plaintiffs have properly alleged a 'common purpose' for the purposes of RICO.").

   *3. Defendant's Participation in Operation or Management*

Plaintiffs' final burden in alleging "conduct of an enterprise" requires pleading facts sufficient to support a claim that Defendant participated in the operation or management of the enterprise. *Williams*, 465 F.3d at 1285. It is not necessary for Plaintiffs to

establish that Defendant is "[primarily responsible] for the enterprise's affairs," but they must allege facts showing that Defendant had "some part in directing the affairs of the enterprise." *Id.* (internal quotation marks and citations omitted). Plaintiffs claim that "Kirby conducts the affairs of the enterprise because it participates in the operation and management of the enterprise itself." (Compl. ¶ 40.) The factual allegations support this contention.[7] "Whatever difficulties the plaintiffs may have in proving such [] allegation[s], they have sufficiently alleged that [Defendant] is engaged in the operation or management of the enterprise." *Williams*, 465 F.3d at 1285.

### B. Pattern of Racketeering Activity

Plaintiffs must also sufficiently allege the second element of their substantive RICO claim, a "pattern of racketeering activity." "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson*, 372 F.3d at 1264 (internal citations omitted) (emphasis in original).

---

[7]Plaintiffs contend that Kirby: (1) "does the accounting to create the [G.S.R. Reports] and pays the distributors only for the first owner registration of the vacuum"; (2) "through its affiliated financing company [UCFS], makes possible the purchase of previously sold and returned vacuums that in all likelihood would be ineligible for financing by any other lender"; (3) "sets the policies and trains the distributors to represent to each prospective customer that the Kirby vacuums being presented for sale as new"; and that (4) "[w]ithout Kirby selling to distributors the boxes and packaging materials and duplicate 'Original Purchaser' warranty registration cards, the distributors would not be able to pull off the hoax." (Compl. ¶ 40.)

11

Here, Plaintiffs contend that Defendant participated in a "pattern of racketeering activity" by engaging in conduct which violates the federal mail fraud statute, 18 U.S.C. § 1341, and the federal wire fraud statute, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity"). In other words, Plaintiffs allege that the "pattern of racketeering activity" is predicated on mail and/or wire fraud, which requires that Plaintiffs plead:

> (1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages.

*Sikes v. Teleline, Inc., U.S.A.*, 281 F.3d 1350, 1360-61 (11th Cir. 2002) (footnotes omitted). Furthermore, on a motion to dismiss a RICO claim predicated on fraud, Plaintiffs must establish that they have satisfied the pleading requirements of Rule 9(b). *Rogers*, 241 F. App'x at 607.

Plaintiffs allege that members of the "enterprise" engage in "regular, systemic, and continuous use[] . . . of the United States Postal Service, the wires, and email" to relay documents and items which are later used "to create the appearance that the previously sold vacuum cleaners are new and that second (or later) purchasers are the original purchasers . . . ." (Compl. ¶¶ 36, 38.) According to Plaintiffs, "each use of the mail, wires or email" constitutes a separate predicate act. (*Id.* at ¶ 37.) Plaintiffs claim that Defendant has used "interstate mail and wire communications to further the scheme" for a period "lasting at least four years preceding the

12

filing of this [lawsuit.]" (RICO Interrog. Resp. 4 at 3.) Plaintiffs further claim that "Kirby and the distributors continue in their scheme at the present and that, in all probability, they will continue to do so." (Compl. ¶ 37.) Taken together, these allegations clearly charge that "(1) the defendant[] committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrate[] criminal conduct of a *continuing* nature." *Jackson*, 372 F.3d at 1265 (emphasis in original).

Under Rule 9(b), however, Plaintiffs must also allege the elements of mail and wire fraud with particularity. Accordingly, with respect to the predicate acts of mail and wire fraud, Plaintiffs must allege

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Rogers*, 241 F. App'x at 608 (internal quotation marks and citation omitted). Defendant argues that Plaintiffs failed to plead the predicate acts because they failed to plead (1) reliance and (2) that the mails or wires were used "in furtherance" of the alleged scheme to defraud. Defendant also asserts that Plaintiffs generally failed to satisfy the Rule 9(b) particularity requirement in pleading the predicate acts of mail and wire fraud.

*1. Use of Mails or Wires "In Furtherance" of Scheme*

As previously noted, the substantive elements of mail and wire fraud include (1) a defendant's intentional participation (2) in a "scheme to defraud" (3) which causes the plaintiff to rely on a

13

misrepresentation made "in furtherance of that [fraudulent] scheme." *Sikes*, 281 F.3d at 1359-60; *see also Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998) (noting that substantive elements are identical for mail and wire fraud). Here, Defendant contends that "the Jordans have not adequately alleged, and cannot allege, that Scott Fetzer used a mail or wire communication to further the scheme" of selling used vacuum cleaners as if they were new. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss 11-12 [hereinafter Def.'s Mem.].)

Defendant asserts that "mailings or wire communications that occur *after* the alleged scheme has come to fruition cannot provide the requisite mailing or wire element." (Def.'s Mem. at 12 (citing *United States v. Maze*, 414 U.S. 395 (1974); *Parr v. United States*, 363 U.S. 370 (1960); *Kann v. United States*, 323 U.S. 88 (1944) (emphasis in original).) Defendant argues that the scheme to defraud the Jordans came "to fruition" once they purchased their vacuum cleaner and that none of the alleged predicate acts occurred *before* that date. For this reason, Defendant maintains that the predicate acts of mail and wire fraud cannot be construed as having been "in furtherance" of the scheme to defraud. (*See* Def.'s Mem. at 12-13.)

Defendant is mistaken, however, in asserting that "the scheme had come to fruition before *any* of the supposed predicate acts occurred." (Def.'s Mem. at 12 (emphasis added).) Plaintiffs indisputably allege (1) that Defendant fraudulently mails "duplicate 'original purchaser registration' forms[,] . . . new boxes and packing materials, touch up paint and scratch removers" and (2) the distributors "call UCFS to qualify consumers as purchasers during the home demonstration[s.]" (RICO Interrog. Resp. 1 at 1-2.) The Court must assume the truth of these alleged fraudulent acts, each of which necessarily occurs either

14

before or at the time of sale. Plaintiffs, therefore, have sufficiently alleged predicate acts made "in furtherance of the fraudulent scheme." *Sikes*, 281 F.3d at 1360.

## 2. Detrimental Reliance on Misrepresentations

Plaintiffs must also allege facts showing they reasonably relied on Defendant's misrepresentation. *Sikes*, 281 F.3d at 1360-61. The Jordans allege that "[t]hey were not told that [their] vacuum had been previously registered in another person's name" and that "[i]t was in fact represented to them that it was a new vacuum and they reasonably relied on that representation." (Compl. ¶ 29.) Defendant argues, however, that the Jordans "fail[ed] to provide any connection whatsoever between the supposed mail and wire fraud . . . and [their] alleged injury." (Def.'s Mem. at 10.)

The Court must construe the Complaint in the light most favorable to Plaintiffs and assume the truth of all factual allegations contained therein. *Day*, 400 F.3d at 1275. Under this standard, the Jordans undeniably allege sufficient facts to raise their claim of reasonable reliance "above the speculative level." *Watts*, 495 F.3d at 1295. Plaintiffs allege that they reasonably relied on the repeated misrepresentation that their used Kirby vacuum was new. (*See* Compl. ¶¶ 29, 44.) The totality of their pleadings demonstrate that such reliance was not solely based upon the oral representations of the salesperson.[8] Plaintiffs' factual allegations plainly support the

---

[8]Defendant primarily relies upon *Sikes v. Teleline, Inc., U.S.A.*, 281 F.3d 1350 (11th Cir. 2002), to support its argument that the Jordans needed to specifically allege their own reasonable reliance upon a misrepresentation made by Defendant which was sent through the mails or wires. According to Defendant, the allegations specific to the Jordans merely allege that they relied on the oral misrepresentations of the salesperson present in their home. This, however, is not a fair reading

15

contention that some of Defendant's misrepresentations were made in communications sent through the mail and wires. (*See id.* at ¶¶ 1, 9, 14, 21, 40; RICO Interrog. Resp. 1 at 1.) Plaintiffs further allege that tens of thousands of individuals, including the Jordans, have relied on representations contained in materials Kirby mails to distributors. (*See* Compl. ¶¶ 17, 44.) Plaintiffs' allegations in support of reasonable reliance raise their claim "above the speculative level" and are sufficient to survive Defendant's Motion to Dismiss. *See Watts*, 495 F.3d at 1295.

### 3. Rule 9(b) Particularity Requirement

Defendant's final argument with respect to Plaintiffs' substantive RICO claim focuses on the pleading requirements of Rule 9(b). A plaintiff who asserts a RICO claim predicated on fraud must plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This Rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (internal quotation marks and citations omitted).

---

of the Complaint. Plaintiffs allege that the "Original Purchaser's Registration" card and the "Owner Care Program" brochure misrepresent to a buyer that he or she is an "original purchaser." Plaintiffs further allege that the salesperson presents these items as part of the sales transaction and that "the consumer is naturally led to believe, and reasonably relies on the representation, that the vacuum is new." (Compl. ¶ 21.) Additionally, Plaintiffs claim that Defendant sends these items to its distributors by use of the mail. Finally, the Jordans claim that "they reasonably relied on that representation." (*Id.* at ¶ 29.) Taken together, these allegations clearly satisfy any requirement under *Sikes* that the Jordans allege reasonable reliance on a misrepresentation sent through the mails or wires.

In order to survive dismissal, Plaintiffs must show that they alleged:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and
(2) the time and place of each such statement and person responsible for making (or, in the case of omissions, not making) same, and
(3) the content of such statements and the manner in which they misled the plaintiff, and
(4) what the defendants obtained as a consequence of the fraud.

*Rogers*, 241 F. App'x at 608; *Brooks*, 116 F.3d at 1371. Defendant argues that Plaintiffs failed to satisfy this burden because "[w]hile Plaintiffs have alleged 'tens of thousands' of acts of mail fraud, they have failed to identify 'the time, place, and manner' of any." (Def.'s Mem. at 17.) As previously explained, however, this simply is not the case.

First, Plaintiffs contend that Defendant's false statements are contained in "duplicate 'original purchaser registration' forms" and in the "Owner Care Program" brochure, each of which is provided to consumers at the time of sale. (*See* RICO Interrog. Resp. 1 at 1; Compl. ¶ 14.) The content of these documents represent to a purchaser that he or she is an "original purchaser" of a new Kirby vacuum cleaner. (*See* Compl. ¶¶ 14, 21.) Plaintiffs claim that these documents mislead purchasers because often the product is used, not new, and has previously been registered in another individual's name. Plaintiffs also allege that, with respect to the Jordans, the "time and place" of the misrepresentation was May 17, 2003.[9] (*Id.* at ¶ 29.)

---

[9]Plaintiffs contend that they, and others: (1) were presented with an "Original Purchaser's Registration" form, which Kirby mailed to distributors, at the time of sale and (2) financed part of their purchase through UCFS, which occurred over the phone during the sale. Each of these

17

Finally, Plaintiffs assert that, "as a consequence of the fraud," Defendant obtained control of the market for used Kirby vacuum cleaners, which protected the price of the new model products. (Compl. ¶ 12.) Plaintiffs' allegations "alert[] [D]efendant[] to the precise misconduct with which [it is] charged," *Brooks*, 116 F.3d at 1370-71, and provide Defendant the "time, place, and manner" of the alleged fraud.

### C. Injury to Plaintiff's "Business or Property" Interest "By Reason Of" Defendant's RICO Violations

The final two elements of Plaintiffs' substantive RICO claim arise from the civil suit provision, which authorizes a plaintiff to "recover threefold the damages he sustains" to "his business or property by reason of" a violation of RICO's substantive provisions. 18 U.S.C. § 1964(c). "The 'by reason of' requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." *Williams*, 465 F.3d at 1287 (internal citations omitted). In evaluating a RICO claim for proximate causation, "the central question . . . is whether the alleged violation led directly to the plaintiff's injuries." *Id*. (internal quotation marks and citation omitted). The Jordans allege that they, along with other similarly situated consumers, suffered "economic damages, measured as the difference in price between a new Kirby vacuum and a used Kirby vacuum," as a result of the alleged scheme to sell used Kirby vacuums as new. (RICO Interrog. Resp. 2 at 2.) This clearly alleges an injury to "property by reason of" Defendant's violation of § 1962(c). Plaintiffs have satisfied this

---

acts constitute a predicate act with respect to the Jordans, and they are sufficient to state a claim for a violation of 18 U.S.C. § 1962(c).

18

Court as to the sufficiency of their pleadings on the substantive RICO claim, and therefore, Defendant's motion is denied as to this claim.

**III. RICO Conspiracy**

Plaintiffs also allege a RICO conspiracy under 18 U.S.C. § 1962(d), which makes it unlawful for "any person to conspire to violate" a substantive provision of the RICO laws. In order to support a claim of RICO conspiracy, a plaintiff must allege "an illegal agreement to violate a substantive provision of the RICO statute." *Jackson*, 372 F.3d at 1269 ("[P]arties cannot be found guilty of conspiring to commit an act that is not itself against the law.") (internal quotations marks and citations omitted). Since the Court has already determined that Plaintiffs state a substantive RICO claim, the sole remaining issue is whether they have sufficiently alleged an agreement to violate § 1962(c). Plaintiffs claim that Defendant "knowingly joined in the conspiracy to participate in the RICO enterprise and participated in the conduct of the enterprise . . . ." (Compl. ¶ 41.) Plaintiffs' allegations make clear that the "enterprise" consists of Kirby, its distributors, and UCFS. Thus, Plaintiff alleges that Defendant knowingly joined in a conspiracy with these other entities "to commit the predicate offenses of mail and wire fraud." (*Id.*) Taking all allegations contained in the Complaint as true, Plaintiffs have stated a claim for RICO conspiracy sufficient to survive Defendant's motion to dismiss.

## CONCLUSION

For reasons stated herein, the Court finds that Plaintiffs have sufficiently stated claims under 18 U.S.C. § 1962(c) and (d). Therefore, the Court denies Defendant's Motion to Dismiss (Doc. 8) and directs Defendant to file an answer to Plaintiffs' Complaint within thirty (30) days of the date of this Order.

IT IS SO ORDERED, this 4th day of December, 2007.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
